**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-0451-WJM-KAS

FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, a Kansas corporation,

    Plaintiff,

v.

STARR INDEMNITY AND LIABILITY CO., a Texas insurance company,

    Defendant.

---

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AS TO COVERAGE AND DEFENDANT'S
MOTION FOR DETERMINATION OF A QUESTION OF LAW**

---

    This matter is before the Court on (1) Plaintiff Farmers Alliance Mutual Insurance Company's ("FAMI") Motion for Summary Judgment as to Coverage ("FAMI's Motion") (ECF No. 55) and (2) Defendant Starr Indemnity and Liability Co.'s ("Starr") Motion for Determination of a Question of Law ("Starr's Motion") (ECF No. 56).  Starr filed a response to FAMI's Motion (ECF No. 58), and FAMI filed a response to Starr's Motion (ECF No. 57).  At the direction of the Court (ECF No. 59), each party also filed a reply in support of its respective motion (ECF Nos. 60, 61).

    For the following reasons, FAMI's Motion is granted to the extent the Court finds that FAMI did not have a duty to defend its insured, Patrick Germaine Simons, or Wheatland Farms; and Starr's Motion is denied to the extent the Court finds Starr did have a duty to defend Simons and Wheatland Farms.

# I. BACKGROUND

## A.   Factual Summary[1]

In this action, FAMI seeks declaratory relief related to FAMI and Starr's respective obligations to defend Patrick Germaine Simons and Wheatland Farms against a separate but related action filed in Arapahoe County District Court in 2021. *See Sage + Sparrow, Inc. & Catalyst BC Holdings Corp. v. J.R. Simplot Co., et al.,* Case No. 2021CV30740 (Arapahoe Cnty. Dist. Ct.) ("Underlying Action").  (ECF No. 55 at 2 ¶ 1; ECF No. 55-1 (the "Underlying Complaint"); *see also* ECF No. 56-4 (same).)

In the Underlying Action, Sage + Sparrow, Inc. and Catalyst BC Holdings Corp. (together, "Sage"[2]) alleged that their crop of hemp was destroyed in June 2019 by aerial herbicide spraying on nearby land owned by Gregory B. West.  (ECF No. 55 at 2 ¶¶ 2-3; ECF No. 55-1 at ¶ 1, 4, 6. 19, 21.)  Sage asserted that West farmed his land under an agreement with Wheatland Farms, a Colorado general partnership "in the business of contract farm management and operations . . . ."  (ECF No. 55 at 6; ECF No. 55-1 at ¶¶ 6, 8.)  Patrick Germaine Simons is a general partner of Wheatland Farms.  (ECF No. 55-1 at ¶ 9.)  Sage alleged that West, Wheatland Farms, and Simons "engaged" Pinnacle Agricultural Enterprises[3] ("Pinnacle") to spray herbicide on West's land and

---

[1] The following factual summary is based on the parties' briefs on the Motions and documents submitted in support thereof.  The facts set forth herein are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] For the purposes of this Order, "Sage" shall also be defined to include Chaloupka, "[t]he sole officer, director and shareholder of Sage + Sparrow."  (ECF No. 55-1 at ¶ 4.)

[3] The parties explain that "[t]he co-defendant in the Underlying Action was J.R. Simplot Company, as successor in interest to Pinnacle Agriculture Enterprises, the named insured under the Starr policy at issue."  (ECF No. 55 at 2 n.2; ECF No. 56 at 3.)  The Court adopts the parties' approach of referring to this entity simply as "Pinnacle."

"engaged, directed or approved [Pinnacle's] work."  (ECF No. 55 at 3 ¶¶ 4-5; *id.* at 6; ECF No. 55-1 at ¶ 20.)  Sage asserted claims against Pinnacle, West, and Simons for negligence, trespass to land, trespass to chattels, nuisance, and conspiracy, alleging they "consciously conspired and deliberately pursued a common plan or design to commit tortious acts alleged" in the Underlying Complaint and "are jointly and severally liable for committing the tortious acts and the harm that resulted" to their hemp crop.  (ECF No. 55-1 at ¶ 13.)

Relevant to this action are two policies issued by FAMI (jointly, the "FAMI Policies") and one policy issued by Starr.  "Patrick Germaine Simons" is the named insured under FAMI Policy Number FO104002FPP01 with effective dates of August 10, 2018 through August 10, 2019 (the "Primary Policy").  (ECF No. 55 at 3 ¶ 6; ECF No. 55-2.)  "Patrick Germaine Simons, Simons Farm Services Inc" is the named insured under FAMI Policy Number PEF561444PEC01, with effective dates of August 10, 2018 through August 10, 2019 (the "Umbrella Policy").  (ECF No. 55 at 3 ¶ 7; ECF No. 55-3.)  Pinnacle is the named insured under Policy Number SASICOM6011319-04 issued by Starr, with effective dates of February 20, 2019 to February 20, 2020 (the "Starr Policy").  (ECF No. 55 at 3 ¶ 8; ECF No. 55-4; *see also* ECF Nos. 56-1 through 56-3 (relevant excerpts of the Starr Policy).)

FAMI defended Simons and Wheatland Farms in the Underlying Action pursuant to a Reservation of Rights, in which FAMI disclaimed any duty to defend or indemnify them.  (ECF No. 55 at 4 ¶ 10; ECF No. 55-5.)  Starr defended Pinnacle in the Underlying Action but declined to defend Simons.  (ECF No. 55 at 4 ¶¶ 11-13; *see also* ECF No. 55-7.)

3

### B. Procedural History

FAMI filed this action in February 2022 against Simons, Wheatland Farms, Sage, and Starr, "seeking declaratory judgment on its obligations to provide defense and indemnity to its insured, Patrick Simons and a general partnership, Wheatland Farms, in which he is a partner." (ECF No. 1 at 1.) Subsequently, FAMI and Starr represented to this Court that the Underlying Action had settled and, as part of the settlement, "FAMI resolved claims with its insured and the underlying Plaintiffs." (ECF No. 52 at 2 ¶ 3.) As such, only Starr remains a defendant in this action. (*Id.*)

The parties asked the Court to enter a briefing schedule on the narrow question of "whether either FAMI or Starr owed a duty to defend FAMI's insured in the [Underlying Action]." (*Id.* at 2 ¶ 4.) According to FAMI and Starr, "resolution by the Court of this coverage question would effectively be determinative of the case." (*Id.* at 3 ¶ 5.) The cross-motions under consideration in this Order comprise the parties' briefing on this narrow issue.

## II. LEGAL STANDARDS

### A. Rule 56

"The Federal Rules of Civil Procedure do not expressly contemplate motions for a determination on a question of law." *Sanders v. Polaris Indus., Inc.,* 2023 WL 3437374, at *2 (D. Colo. May 12, 2023.) "However, where a party 'seek[s] a determination of an issue of law based on facts that are not in dispute,' courts in this District have permitted such motions under Rule 56." *Id.* (quoting *Losasso v. Toter,* 2008 WL 681467, at *1 (D. Colo. Mar. 7, 2008)).

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

### B. Applicable Substantive Law

Where, as here, federal jurisdiction is predicated upon diversity, the court applies the substantive law of the forum state. *Barrett v. Tallon,* 30 F.3d 1296, 1300 (10th Cir. 1994). Under Colorado law, the interpretation of insurance policies, like other contracts, present questions of law and are therefore appropriate for summary judgment. *Thompson v. Md. Cas. Co.,* 84 P.3d 496, 501 (Colo. 2004). "As with any contract, [Colorado courts] construe the terms of an insurance policy in order to promote the intent of the parties." *Cary v. United of Omaha Life Ins. Co.,* 108 P.3d 288, 290 (Colo. 2005). "The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided." *Allstate Ins. Co. v. Huizar,* 52 P.3d 816, 819 (Colo. 2002). Colorado courts "read the provisions of an insurance policy as a whole, rather than reading them in isolation," and "construe the policy so that all provisions are harmonious and none are rendered meaningless." *Sachs v. Am. Family Mut. Ins. Co.,* 251 P.3d 543, 546 (Colo. Ct. App. 2010). Moreover, "ambiguous coverage provisions in an insurance contract are liberally construed in favor of the insured," but "courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage." *Id.*

**C.     Duty to Defend**

"The duty to defend pertains to the insurance company's duty to affirmatively defend against pending claims." *Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo. 1996). The Colorado Supreme Court "has set a high standard for an insurance company seeking to avoid its duty to defend that focuses on examination of the allegations in the underlying complaint against the insured." *Compass Ins. Co.,* 984 P.2d at 613. "An insurer's duty to defend arises when the underlying complaint . . . alleges any facts that might fall within the coverage of the policy." *Id.* (quoting *Hecla Min. Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo. 1991)). This has been referred to as the complaint rule. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 615 (Colo. 1999). Thus, "[t]he actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." *Hecla Min. Co.,* 811 P.2d at 1089 (citation omitted). "Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy." *Id.*

"[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Id.* (citation omitted); *see also Constitution Assocs.,* 930 P.2d at 563 ("Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage . . . ."). Thus, "[t]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 301 (Colo. 2003).

6

Where policy exclusions are implicated, "the insurer bears the burden of establishing that 'the allegations in the complaint are solely and entirely within the exclusions in the insurance policy.'"  *Cotter Corp. v. Am. Empire Surplus Linse Ins. Co.,* 90 P.3d 814, 829 (Colo. 2004) (citation omitted).

III. ANALYSIS

A.     FAMI's Duty to Defend Simons

1.     <u>Mootness</u>

The Court first briefly addresses Starr's contention that whether FAMI owed Simons and Wheatland Farms a duty to defend under the FAMI Policies is moot.  Specifically, Starr asserts that because FAMI has voluntarily dismissed Simons from this action, "[t]here is no longer any controversy concerning defense coverage for FAMI's insured under its own policy."  (ECF No. 58 at 4.)

In support of this position, Starr cites two cases.  (ECF No. 58 at 4 (citing *Sudduth v. Citimortgage, Inc.,* 79 F. Supp. 3d 1193 (D. Colo. 2015); *Tetra Tech Inc. v. Town of Lyons,* 641 F. Supp. 3d 1042 (D. Colo. 2022)).)  FAMI counters that these cases are inapposite, and the Court agrees.  (ECF No. 60 at 2-3.)  Both involved motions to dismiss filed by parties who had, before disposition of the motion, been dismissed from the case by stipulation.  *Sudduth,* 79 F. Supp. 3d at 1200 (denying CMI's pending motion to dismiss as moot because "Plaintiffs and CMI [already] stipulated to the dismissal, with prejudice, of Plaintiffs' claims against CMI"); *Tetra Tech,* 641 F. Supp. 3d at 1054 (denying Honeywell's motion to dismiss as moot because "the Honeywell entities are no longer parties in this action, pursuant to [plaintiff's] voluntary dismissal without prejudice of the claims against Honeywell").

Unlike these cases, the controversy before the Court is not whether FAMI is

7

owed recompense from Simons and/or Wheatland Farms, who have already been voluntarily dismissed from this action. Instead, the dispute before the Court is whether FAMI may be able to recover defense costs from Starr, both of whom are very much still parties to this suit. Indeed, FAMI and Starr *jointly* informed the Court the resolution of that question necessarily turns on whether either or both insurers had a duty to defend Simons and/or Wheatland Farms in the first instance. In any case, Starr's argument that FAMI has "confesse[d]" that Simons was entitled to defense coverage under its policy by voluntarily dismissing him from this suit runs contrary to the well-established notion that "[c]ompromises and offers to compromise are not admissions of liability." *Silva v. Basin Western, Inc.,* 47 P.3d 1184, 1190 (Colo. 2002).

The Court reserves the ultimate question of equitable contribution and in what amount to the parties for private resolution (or failing which, at trial), consistent with their representations in the prior Stipulated Motion to Amend Scheduling Order. (*See* ECF No. 52 at 2-3.) As such, the Court will not address any argument on that point in the parties' Motions. (*E.g.,* ECF No. 58 at Section II.2.) However, whether FAMI had a duty to defend Simons and Wheatland Farms in connection with the Underlying Action is ripe for determination.

### 2. The Primary Policy

FAMI does not dispute that the Underlying Complaint's allegations "can be reasonably read to assert an accident resulting in property damage[4] during the policy period," which would generally fall within the liability coverage of the Primary Policy.

---

[4] "Property damage" is defined under the Primary Policy as "physical injury to tangible property," including "the loss of use." (ECF No. 55-2 at 87.)

(ECF No. 55 at 7 (citing ECF No. 55-2 at 87-88).)  However, the Primary Policy also contains a number of coverage exclusions, two of which FAMI contends are pertinent to whether it had a duty to defend Simons and Wheatland Farms.

First, the Primary Policy excludes personal liability coverage for "'property damage' which results from the discharge of substances from an aircraft" ("Exclusion 'o'").  (ECF No. 55-2 at 90-91.)  Second, the Primary Policy contains a specific "Pollution Exclusion Endorsement," which incorporates the following additional exclusion to liability coverage:[5]

> **l.** 'Bodily injury' or 'property damage' which results from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' into or upon land, water, or air.
>
> However, this exclusion does not apply to:
>
> . . .
>
> **2.** Any sums, subject to the **Limited Pollution Coverage Aggregate Limit**, which the insured becomes legally obligated to pay as damages for physical injury to property off the 'insured premises' if:
>
> **a.** the physical injury is the result of:
>
> i) the discharge, dispersal, release, or escape of chemicals, liquids, or gases into the air from the insured premises that occurs in its entirety at a specific time and place during the policy period; or,
>
> ii) the discharge, dispersal, release, or escape of chemicals, liquids, or gases into the air or onto the land or water from a container, tank or tank wagon which first sustains actual physical damage from accidental collision, overturn or upset which occurs during the policy period

---

[5] Exclusion "l" in the Pollution Exclusion Endorsement replaces Exclusion "l" as it is written in the Primary Policy's "general exclusions."  (*Compare* ECF No. 55-2 *with id.* at 91.)

9

        and does not arise out of the ownership, maintenance, operation, use, loading or unloading of any 'motor vehicle' as defined in this insurance policy; and

    **b.**  the physical injury is the result of chemicals, liquids, or gases used in the normal and usual farming operations of the insured; and

    **c.**  the chemicals, liquids or gases have not been discharged, dispersed, or released from an aircraft; and

    **d.**  the physical injury to property does not arise out of farming operations that are in violation of an ordinance or law.

Physical injury does not:

    **a.**  include indirect or consequential damages such as loss of use of soil, water, animals, crops, or other property or loss of market; or

    **b.**  apply to property owned, rented, or borrowed by the named insured.

(ECF No. 55-2 at 112-113.)  "Pollutants" are defined in relevant part as "any solid, liquid, gaseous or thermal irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste.  Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of."  (ECF No. 55-2 at 87.)

      FAMI contends that both policy exclusions apply here because Sage alleged in the Underlying Action that Simons and Wheatland Farms "applied or caused to be applied toxic herbicide on the land owned by West, by means of aerial spraying."  (ECF No. 55-1 at ¶ 26; *see also id.* at ¶¶ 19, 23, 26-29, 33, 41, 44-45, 50 (alleging drift from "aerial spraying" was the cause of the destruction of Sage's hemp crop).)  Sage further alleged "[t]he drifting herbicide proximately caused harm to the hemp plants growing on [Sage's] land and prevented them from producing seed," resulting in "a total crop loss."

(*Id.* at ¶ 30.)

The Court agrees with FAMI that, based on these allegations, there can be little dispute that Sage alleged both (1) "property damage . . . result[ing] from the discharge of substances from an aircraft" as described in Exclusion "o" (ECF No. 55-2 at 91), and (2) "'property damage' which results from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' into or upon land, water, or air" as described in the Pollution Exclusion Endorsement (*id.* at 112). The Court is further persuaded that the exception to the Pollution Exclusion Endorsement for "physical injury to property off the 'insured premises'" is inapplicable here, given "physical injury" is defined to exclude "loss of . . . crops." (*Id.* at 113.)

As such, the Court concludes FAMI has met its burden to show it owed no duty to defend Simons and Wheatland Farms in the Underlying Action pursuant to the Primary Policy because the Underlying Complaint's allegations fall within the plain language of Exclusion "o" and the Pollution Exclusion Endorsement.

### 3. The Umbrella Policy

The Umbrella Policy similarly includes an "Amended Pollution Exclusion,"[6] which provides in relevant part that Simons's liability coverage under the Umbrella Policy does not extend to "'property damage' which results from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' into or upon land, water, or air." (ECF No. 55-3 at 25.) The terms "property damage" and "pollutant" are defined in the same manner as defined in the Primary Policy. (*See* ECF No. 55-3 at

---

[6] The Amended Pollution Exclusion replaces the language of Exclusion 1.p. under the "general exclusions" of the Umbrella Policy. (ECF No. 55-3 at 25.)

11

8.)  As a result, the Court concludes the Amended Pollution Exclusion under the Umbrella Policy has the same meaning as the Pollution Exclusion Endorsement under the Primary Policy.  (*Compare* ECF No. 55-3 at 25 *with* ECF No. 55-2 at 112.)  Thus, for the same reasons described above, the Court concludes the allegations in the Underlying Complaint fall squarely within the Umbrella Policy's Amended Pollution Exclusion by their plain language.[7]

Notably, Starr has not advanced any argument as to why either of the FAMI Policies' exclusions are inapplicable to the allegations in the Underlying Complaint. Instead, Starr rests on its argument, rejected above, that the issue of FAMI's duty to defend is moot in view of Simons and Wheatland Farms's voluntary dismissal from the suit.  (*See* ECF No. 58 at 4-5.).  As Starr has pointed the Court to no other language in the FAMI Policies or allegations in the Underlying Complaint upon which the Court could conclude those policies even arguably provide liability coverage to Simons and/or Wheatland Farms against the Underlying Action, the Court concludes FAMI has met its burden of establishing it owed no duty to defend Simons and/or Wheatland Farms under either of the FAMI Policies.

### B.   Starr's Duty to Defend Simons

Most significantly, the Starr Policy includes an *Aerial Application Coverage Endorsement* ("Endorsement") which specifically provides that:

> The Company agrees to pay on behalf of the **insured** all sums which the insured shall become legally obligated to pay as damages because of **bodily injury** and **property**

---

[7] FAMI also raises that Wheatland Farms is not an "insured" under the Umbrella Policy. (ECF No. 55 at 11.)  Since the Court has concluded the Umbrella Policy would not have even provided Simons, the named insured, with liability coverage against the Underlying Action, the Court sees no need to analyze whether Wheatland Farms was an "insured."

> **damage** resulting from **aerial application** of **chemicals** applied by the **named insured**.
>
> With respect to coverage provided by this endorsement the following terms shall mean:
>
> **Aerial application** means the application of **chemicals** by aircraft including flights to and from the place the **insured** will be applying **chemicals**.
>
> **Chemical(s)'** [*sic*] means any substance or mixture of substances intended to prevent, destroy, repel or mitigate any pest, or any substance or mixture of substances intended for use as a plant or tree regulator, defoliant or dessicant.
>
> The Company will pay on behalf of the **insured** all sums the **insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage** resulting from **chemicals** applied by the **insured**.

(*Id.*) (emphases in original). "Property damage" is defined under the Starr Policy as:

> (a) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

(ECF No. 55-4 at 15) (emphasis in original).

For similar reasons discussed above, the Court finds that the Underlying Complaint alleges "property damage resulting from aerial application of chemicals applied by the named insured." (*Id.*) And Starr does not contend otherwise.[8] Instead,

---

[8] FAMI points out that the Starr Policy also includes a *Noise and Pollution and Other Perils Exclusion Clause* written on form AVN46B (02/06) ("Pollution Exclusion"), which at first blush appears to be in some tension with the Endorsement. (*See* ECF No. 55-4 at 49.) However, Starr does not dispute the Endorsement controls over the Pollution Exclusion. (ECF No. 58 at 5 ("The aerial application endorsement specifically overrides pollution exclusionary wording of the policy").) Thus, the Court will not address the potential conflict in detail except to note that it agrees the Endorsement should control over the Pollution Exclusion due to the Endorsement's language that "COVERAGE PROVIDED HEREIN OVERRIDES THE POLLUTION EXCLUSIONARY WORDING CONTAINED IN THIS POLICY AND AVN46B."

13

Starr asserts that it had no duty to defend Simons and Wheatland Farms against the Underlying Action pursuant to the Endorsement because (1) they are not "insured[s]" as defined in the Starr Policy, and (2) even to the extent they are "insured[s]," the Endorsement creates only a duty to indemnify, not to defend. The Court addresses each argument in turn.

1. <u>Definition of "Insured"</u>

Starr foremost argues it had no duty to defend Simons and Wheatland Farms against the Underlying Action because they do not fall within the definition of an "insured" under the Starr Policy, which is as follows:

> [T]he unqualified word **insured** wherever used in this policy with respect to Coverages A, B, C, and D, includes not only the **named insured** but also any person while using or riding in the **aircraft** and any person or organization legally responsible for its use, provided the actual use is with the express permission of the **named insured**.

(ECF No. 55-4 at 12) (emphasis in original). Starr explains that this provision is commonly referred to in insurance policies as an "omnibus clause." (ECF No. 58 at 7; ECF No. 56 at 6.)

The Underlying Complaint does not allege that Simons was himself using or riding in the aircraft. Nor does there appear to be any dispute that the "actual use" of the aircraft was by an agent of the named insured, Pinnacle—*i.e.,* eliminating the issue of whether "actual use" of the aircraft was with the permission of the named insured. Instead, the only material dispute is whether Simons and Wheatland Farms are "insured[s]" because they are "person[s] or organization[s] *legally responsible for* [the

---

(ECF No. 55-4 at 23.)

14

aircraft's] use." (Emphasis added.) In the Court's view, the Underlying Complaint arguably alleges that Simons and Wheatland Farms were "legally responsible" for the aircraft's use under both direct and vicarious liability theories.

First, FAMI argues the Underlying Complaint alleges Simons and Wheatland Farms are legally responsible for use of the aircraft by Pinnacle insofar as it asserts all of the named defendants are "jointly and severally liable for committing the tortious acts and the harm that resulted" from the aerial spraying of herbicides on West's land. (ECF No. 55 at 13 (citing ECF No. 55-1 at ¶¶ 9, 12-13).) Starr counters that these allegations of joint and several liability are insufficient to confer "legal responsibility" within the meaning of the omnibus clause. In so doing, Starr attempts to distinguish between "someone with legal responsibility for actual operation of the aircraft," who would ostensibly be covered as an "insured" with someone (like Simons) who shares "joint responsibility for payment of damages while the aircraft was being operated," who would not. (ECF No. 58 at 6.) As the Court understands Starr's argument, it is unprepared to say that one legally responsible for use of the aircraft would be an "insured" under the Starr Policy, but one legally responsible for *damages resulting from* use of the aircraft necessarily would not, particularly based on the allegations before the Court in this case.

Second, Sage alleged that Pinnacle was "engaged to spray herbicide on West's land by West, Wheatland Farms and Patrick G. Simons, who *engaged, directed or approved* the work." (ECF No. 55-1 at ¶ 20 (emphasis added).) While broad, the allegation suggests that Sage could have adduced some set of facts supporting that Simons and Wheatland Farms had control over Pinnacle's work, and in turn that Simons

15

and Wheatland Farms could have been liable for Pinnacle's use of the aircraft under a theory of respondeat superior.  *See, e.g., Perkins v. Regional Transp. Dist.,* 907 P.2d 672, 674 (Colo. Ct. App. 1995) ("In order to sustain a claim based upon *respondeat superior*, a plaintiff must show that the defendant individually had actual control over or had the right to control the actions of the other.").  It also directly contradicts Starr's argument that Simons and Wheatland Farms could not have been found "legally responsible for use of the aircraft" under a vicarious liability theory because "it was never alleged that Mr. Simons had the right to control the details of the performance of the application of agricultural chemicals by Pinnacle []."  (ECF No. 58 at 12.)

Indeed, in its own Motion, Starr contradictorily states "Mr. Simons may have engaged, directed, and approved Pinnacle['s] [] application of agricultural chemical to his fields, but that does not mean he was legally responsible for the 'use' or operation of the aircraft which conducted the application . . . ."  (ECF No. 56 at 7-8.)  The Court is again unprepared to draw the line Starr describes based solely on the allegations in the Underlying Complaint.  Moreover, Starr argues Pinnacle's status as an independent contractor forecloses the possibility of vicarious liability (*see, e.g.,* ECF No. 58 at 12), but the Underlying Complaint contains no allegation that Pinnacle was an independent contractor.[9]

Starr further counters that the intended purpose of the omnibus clause is to extend liability coverage only to persons other than the named insured who "actually

---

[9] One of Starr's counterarguments to the vicarious liability theory depends on documents beyond the Starr Policy and the Underlying Complaint.  (ECF No. 56 at 9-10.)  However, Starr itself notes that "[w]hen an insurer refuses to defend the general rule is 'that the duty to defend is determined from the factual allegations contained in the complaint.'" (ECF No. 56 at 3 (quoting *Cotter Corp.,* 90 P.2d at 827).)  Thus, the Court will not consider this argument.

operat[e], rid[e], borrow[] or us[e] the aircraft"—and no others.  (ECF No. 58 at 6.)  The Court agrees that is *one* such purpose of the omnibus clause in the Starr Policy, but to say that is the *only* purpose would render a portion of the definition superfluous.  That is, the text "and any person or organization legally responsible for its use" could simply be deleted from the definition of "insured" in the Starr Policy, and it would serve the same purpose advocated by Starr.  (ECF No. 55-4 at 13.)  Colorado law instructs that courts should avoid such an interpretation.  *General Sec. Indem. Co. of Ariz. v. Mtn. States Mut. Cas. Co.,* 205 P.3d 529, 537 (Colo. Ct. App. 2009) ("Under Colorado law, we must avoid reading an insurance policy so as to render some provisions superfluous.").

The Court further observes that it appears Starr did expressly exclude some categories of persons and entities from the general definition of "insured" in the Starr Policy.  (*See* ECF No. 55-4 at 13 (stating the definition of "insured" does not apply to, *e.g.*, "any person or organization operating the aircraft under the terms of any rental agreement").)  If Starr also wished to exclude, for instance, any person or entity hiring or engaging Pinnacle to perform aerial spraying on their property from the definition of an "insured," it similarly could have done so—but it did not.

In sum, the Courts finds Starr's attempts to limit the definition of an "insured" to necessarily exclude Simons and Wheatland Farms to strain credulity.  The Underlying Complaint at least *arguably* alleges Simons and Wheatland Farms were, among the other named defendants, legally responsible for the use of the aircraft on West's land by Pinnacle, which is all that is required to find a duty to defend under Colorado's complaint rule.  *See, e.g., Hecla Min.,* 811 P.2d at 1089 (duty to defend arises where

17

"allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded").

2. <u>Duty to Defend in Connection with Endorsement</u>

Starr also argues that, even assuming Simons and Wheatland Farms were "insured[s]," the coverage provided by the Endorsement does not include a duty to defend. (ECF No. 58 at 5.) In reaching this conclusion, Starr points to the Endorsement's language that the "Company agrees *to pay* on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury and property damage resulting from aerial application of chemicals applied by the named insured." (ECF No. 55-4 at 23 (emphasis added).) Starr asserts this language evinces Starr's agreement "to pay" (*i.e.,* indemnify) but not defend.

The Court is unpersuaded because the Endorsement, by its express terms, is merely an amendment to the Starr Policy. And the general policy provisions of the Starr Policy to which the Endorsement is appended otherwise explicitly set forth Starr's agreement to defend an "insured" against a suit seeking damages for "property damage," as is the case here:

> The Company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

(ECF No. 55-4 at 4) (emphases in original). Starr does not point the Court to any other

18

language in the Endorsement upon which it could conclude Starr intended to eliminate this duty to defend with respect to lawsuits falling within the scope of the Endorsement.

Thus, for all the reasons discussed above, the Court concludes Starr owed a duty to defend Simons and Wheatland Farms under the Starr Policy.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. FAMI's Motion (ECF No. 55) is GRANTED insofar as the Court FINDS that FAMI did not have a duty to defend Simons or Wheatland Farms against the Underlying Action;

2. Starr's Motion (ECF No. 56) is DENIED insofar as the Court FINDS Starr did have a duty to defend Simons and Wheatland Farms against the Underlying Action; and

3. The parties are DIRECTED to jointly file a status report by no later than **December 13, 2024**, advising the Court whether they have reached a settlement of the matter or, in the alternative, if a trial setting will be necessary.

Dated this 11th day of October, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge